**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:22-cv-310 (MTT)** |
| | ) | |
| **RAY E. GRIGGERS II, *et al.*,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

The United States filed this action against Ray E. Griggers II and Mary C. Griggers to recover over $800,000 in unpaid federal income taxes owed by Mr. Griggers and to foreclose federal tax liens on real property in Barnesville, Georgia, where they reside.[1]  Doc. 6 ¶¶ 1, 5-6, 25, 29, 52.  Before the Court are cross motions for summary judgment.  Docs. 90; 92.  For the following reasons, Mr. and Mrs. Griggers' motion is **DENIED** (Doc. 90).  The United States's motion (Doc. 92) is **GRANTED** in part and **DENIED** in part.  The United States's motion for summary judgment for tax year 2009 is **DENIED**.  Summary judgment in favor of the United States is **GRANTED** for the 2002, 2003, 2004, 2015, and 2017 tax years.

---

[1] Mrs. Griggers is only a defendant in this action as a party who may claim interest in the property pursuant to 26 U.S.C. § 7403(b).  Doc. 6 ¶ 6.

As discussed below, Andrea Anthony, in her capacity as Tax Commissioner of Lamar County, Georgia; Jennie A. Areson (individually and as trustee for Valiant); Jerry Lahr (individually and as trustee for Valiant); Fortress Management Inc. (as trustee for Valiant); Roy Lee Baker II (individually and as trustee for Valiant); Valiant Enterprises; Starburst Management, LLC; and Oracle—were also joined as defendants because of possible claims of interest in the property.  Doc. 6 ¶¶ 6-13.  As it has turned out, none has asserted such interest or has otherwise contested the right of the United States to foreclose as requested.

# I. BACKGROUND[2]

## A. Factual Background

### 1. Tax Liabilities

Except for the 2010 tax year, Mr. Griggers allegedly has not filed a tax return since 1998.[3]  Doc. 6 ¶ 28.  The IRS examined Mr. Griggers for the following years for which he did not file federal tax returns: 2002, 2003, 2004, 2009, 2015, and 2017. Doc. 92-4 ¶ 12.  Based on information reported to the IRS by third parties, it was determined that Mr. Griggers earned income and was required to file a return and pay tax, so the IRS calculated deficiencies for the years in question using "deficiency and other procedures" authorized under the Internal Revenue Code.  Docs. 92-4 ¶ 12; 92-8; 106-1 ¶¶ 8, 14-15; 106-2 at 5-7; 106-3.  Mr. Griggers denies that he was required to file federal tax returns and pay tax.  Docs. 92-3 ¶¶ 1-2; 93-1 ¶¶ 1-2.

The IRS claims it notified Mr. Griggers of the deficiencies, which he denies. Docs. 92-3 ¶ 3; 93-1 ¶ 3; 92-4 ¶¶13-14; 92-6; 92-7; 92-8; 106-1 ¶¶ 8, 12-14.

---

[2] Unless otherwise stated, these facts are undisputed and are from the United States's undisputed statement of facts.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Mr. and Mrs. Griggers filed a corrected response to the United States's motion without first obtaining leave of court.  Doc. 97.  As far as the Court can tell, there is little to no difference between the exhibits to their corrected response and their original response.  *Compare* Doc. 93 *with* Doc. 97.  Because the Court has confirmed that Mr. and Mrs. Griggers' corrected responses to the United States's statement of undisputed facts are substantively identical to their original responses, and because Mr. and Mrs. Griggers failed to file their "corrected" responses to the United States's statement of undisputed facts as separate exhibits, the Court refers to their original responses to the United States's statement of facts for clarity. Docs. 93-1; 93-2.

[3] The liabilities in this case allegedly stem from a sophisticated tax avoidance scheme that ultimately landed the scheme promoter in prison.  Doc. 65 at 2-3.  According to the United States, Mr. and Mrs. Griggers came to the IRS's attention because they were identified as customers of a Colorado attorney who was fraudulently promoting "pure trust organizations" as an unlawful means of secreting income by funneling it through shell companies.  Docs. 65-8 at 18-24; 66 at 2.  As part of the alleged scheme, the United States claims that Mr. Griggers oversaw the repeated transfer and encumbrance of his residence in Barnesville, Georgia, through an intricate network of sham entities and UCC liens.  Docs. 6 ¶¶ 27-28; 66 at 2-3.  Many of the individuals involved in these transactions were ultimately criminally convicted for various fraud offenses.  Doc. 66 at 3; *see also* Docs. 6 ¶¶ 27-28; 65-8.

First, on March 19, 2012, the IRS claims it provided Mr. Griggers "a letter detailing his tax liabilities for 2009," along with a Form 4549.  Docs. 92-4 ¶ 14; 92-8. Form 4549, "Income Tax Examination Changes," informs the taxpayer of a deficiency and the proposed changes to his or her reported income, applicable credits or deductions, and the tax due.  Doc. 92-8.  On March 30, 2012, Mr. Griggers allegedly signed and returned Form 4549 to the IRS.  Doc. 92-4 ¶ 14; 92-8 at 5.  Mr. Griggers claims he does not recall signing and returning Form 4549.  Docs. 93 at 9; 97 at 9.  The IRS assessed unpaid tax liabilities against Mr. Griggers for 2009 on May 28, 2012. Docs. 92-4 ¶ 15; 92-5.

Second, the IRS claims it sent by certified mail a notice of deficiency to Mr. Griggers at his last-known address for 2002, 2003, and 2004 on May 14, 2012.  Docs. 92-6; 106-1 ¶ 8.  According to the IRS Revenue Officer assigned to this case, Susan Freeman, "[t]he IRS obtained a certified mail receipt from the U.S. Postal Service to demonstrate that it delivered the Notice of Deficiency to the Post Office.  The tracking number on the receipt was: #7011-3500-0000-2222-8339."  Doc. 106-1 ¶ 12.  Mr. Griggers claims he never received the notice and submitted a screenshot from a USPS's website stating:



Docs. 93-7; 97-5; 108-4.  The IRS assessed unpaid tax liabilities against Mr. Griggers for 2002, 2003, and 2004, including penalties for failure to file returns and pay tax, on October 8, 2012.  Docs. 92-4 ¶ 15; 92-5.

Third, the IRS claims it mailed a notice of deficiency to Mr. Griggers at his last-known address for 2015 and 2017 on August 23, 2019.  Docs. 92-7; 106-1 ¶ 14.  In his summary judgment response, Mr. Griggers denies receiving this notice, yet in his counterclaim[4] Mr. Griggers claimed the United States "sent a series of notices and demands to [him]" including "Letter 531, tax periods 2015, 2017" on August 23, 2019.  Doc. 53 at 3; 53-4.  IRS Letter 531 is a notice of deficiency, and Mr. Griggers attached a copy of the first page of this deficiency notice as an exhibit to his counterclaim.[5]  Docs. 53 at 3; 53-4.  The IRS assessed unpaid tax liabilities against Mr. Griggers for 2015 and 2017, including penalties for failure to file returns and pay tax, on March 2, 2020.  Docs. 92-4 ¶ 15; 92-5.

According to Revenue Officer Freeman, the IRS provided Mr. Griggers notice of all assessments and timely made demand for payment as follows:

---

[4] After unsuccessfully moving to dismiss, Mr. Griggers filed a "complaint" against the United States, which the Court construed as a counterclaim, alleging unauthorized inspection or disclosure of his return information in violation of 26 U.S.C. §§ 6103 and 7431.  Doc. 53.  Specifically, Mr. Griggers claimed the United States obtained his return information without authority and then used that information to fabricate a dummy return which he argued was unlawful because no tax liability had been assessed and thus he owed no taxes for the years in question.  Docs. 53; 81.  The United States moved to dismiss the counterclaim because Mr. Griggers failed to allege who disclosed what to whom and when the disclosure occurred.  Doc. 58.  The Court held a status conference on September 7, 2023, and personally questioned Mr. Griggers about the deficiencies in his counterclaim.  Doc. 74.  The Court then gave Mr. Griggers the opportunity to submit a supplemental brief after he deposed Revenue Officer Freeman on October 25, 2023.  Doc. 72.  Mr. Griggers filed his supplemental brief on November 13, 2023, but failed to address the deficiencies raised by the United States.  *See* Docs. 58; 81.  The Court granted the United States's motion and dismissed the counterclaim on December 21, 2023.  Doc. 89.

[5] *See* "Letter 531 – Notice of Deficiency," *Letters and notices offering an appeal opportunity*, IRS (Aug. 20, 2024), https://www.irs.gov/appeals/letters-and-notices-offering-an-appeal-opportunity.

| Tax Year | Assessment Date | Assessed Tax | Assessed Penalties | Assessed Interest |
|---|---|---|---|---|
| 2002 | 10/8/2012 | $59,552.00 | $43,175.00* $14,888.00** $1,990.07*** | $65,580.87 |
| 2003 | 10/8/2012 | $33,896.00 | $24,574.00* $8,474.00** $874.55*** | $33,103.89 |
| 2004 | 10/8/2012 | $92,242.00 | $66,875.45* $23,060.50** $2,641.06*** | $78,096.86 |
| 2009 | 5/28/2012 | $7,644.00 | $801.00** | $316.45 |
| 2015 | 3/2/2020 | $4,155.00 | $205.00* $121.02** | $141.46 |
| 2017 | 3/2/2020 | $7,645.00 | $978.75* $500.25** | $554.76 |
| Total: | | $205,134.00 | $189,158.65 | $177,794.29 |

\* Late-filing penalty under 26 U.S.C. § 6651(a)(1).
\*\* Late payment penalty under 26 U.S.C. § 6651(a)(2).
\*\*\* Estimated tax penalty under 26 U.S.C. § 6654.

Docs. 92-4 ¶¶ 15-16; 92-5.  When Mr. Griggers refused to pay the assessed taxes, penalties, and interest, federal tax liens arose automatically under 26 U.S.C. § 6321. The IRS then initiated collection and filed notices of federal tax liens against Mr. Griggers and his residence located at 531 Greenwood Street, Barnesville, Georgia (the "Greenwood property"), as well as his alleged "nominee," Starburst Management, LLC, which currently holds title to the Greenwood Property.[6]  Doc. 92-4 ¶ 20.

    *2. Greenwood Property*

    Mr. and Mrs. Griggers have resided at the Greenwood property since 1998. Docs. 92-3 ¶ 29; 93-1 ¶ 29; 93-2 ¶ 29.  Mr. Griggers purchased the Greenwood Property by warranty deed on December 31, 1998, and incurred a mortgage obligation of $81,600.00 with SunTrust Bank, Middle Georgia, N.A. secured by security deed

---

[6] Notices of federal tax liens were filed in Lamar County, Georgia on the following dates: June 10, 2013; June 19, 2019; July 19, 2021; and April 25, 2022.  Doc. 92-4 ¶ 20.

recorded the same day.  Doc. 92-11; *see also* Docs. 92-3 ¶¶ 9-10; 93-1 ¶¶ 9-10; 93-2 ¶¶ 9-10.  Since then, the property has been transferred three times.  Docs. 92-3 ¶¶ 12, 14, 18; 93-1 ¶¶ 12, 14, 18; 93-2 ¶¶ 12, 14, 18.  Despite these transfers, Mr. and Mrs. Griggers have continued to reside at the property and have purportedly obtained four UCC loans ranging from roughly $412,000 to over $1,600,000 using the Greenwood Property as collateral.  Docs. 92-3 ¶¶ 21, 23-27, 29; 93-1 ¶¶ 21, 23-27, 29; 93-2 ¶¶ 21, 23-27, 29.

a. <u>Conveyances</u>

On January 4, 1999, Mr. Griggers transferred the Greenwood Property to Jerry Lahr, Jennie A. Areson (f/k/a Lahr), and Valiant Enterprises by quitclaim deed for no consideration.  Doc. 92-13; *see also* Docs. 92-3 ¶ 12; 93-1 ¶ 12; 93-2 ¶ 12.  The quitclaim deed was recorded in the Lamar County Superior Court Clerk's Office the next day.  Doc. 92-13 at 2.  Valiant Enterprises has no Employer Identification Number and is not registered with the Georgia Secretary of State.  Docs. 92-3 ¶ 16; 93-1 ¶ 16; 93-2 ¶ 16.

On January 13, 1999, Mr. and Mrs. Griggers filed, as "Co-Managing Directors," a "Public Notice of Debt Disclaimer of Valiant Enterprises a Pure Trust Organization" recorded in the Lamar County Superior Court Clerk's Office.  Doc. 92-12; *see also* Docs. 92-3 ¶ 13; 93-1 ¶ 13; 93-2 ¶ 13.  The notice purportedly exempts Valiant's trustees, officers, managing directors, and agents from personal liability when dealing with trust property.  Docs. 92-3 ¶ 13; 92-12; 93-1 ¶ 13; 93-2 ¶ 13.

On February 11, 2005, Lahr and Areson transferred the Greenwood Property by quitclaim deeds for no consideration to Fortress Management, Inc., as trustee for

Valiant Enterprises.  Doc. 92-14; *see also* Docs. 92-3 ¶ 14; 93-1 ¶ 14; 93-2 ¶ 14.  The

same day, Mr. Griggers filed an affidavit with the Lamar County Superior Clerk stating

he had inadvertently transferred the Greenwood Property to Lahr and Aerson in their

individual capacities instead of as trustees for Valiant.  Doc. 92-15; *see also* Docs. 92-3

¶ 15; 93-1 ¶ 15; 93-2 ¶ 15.  According to Mr. Griggers, "[i]t was the intention at all times

to transfer the aforementioned property to the Grantees [i.e., Lahr and Aerson] solely as

Trustees pursuant to a trust indenture creating Valiant Enterprises as a trust dated

November 30, 1998, said trust appointing Jerry Lahr and Jennie A. Lahr as trustees."

Doc. 92-15 at 2.  The affidavit further states that the Greenwood Property "continue[d] to

be held in trust by Valiant," and that quitclaim deeds executed by Lahr and Aerson were

being simultaneously recorded.  *Id.*

On May 28, 2012, the IRS assessed tax liabilities against Mr. Griggers for the

2009 tax year.  Docs. 92-4 ¶ 15; 92-5.  Then, on October 8, 2012, unpaid federal

income tax liabilities for 2002, 2003, and 2004 were assessed against Mr. Griggers.

Docs. 92-4 ¶ 15; 92-5.

On October 21, 2012, Starburst Management, LLC was registered with the

Indiana Secretary of State.  Docs. 92-3 ¶ 20; 93-1 ¶ 20; 93-2 ¶ 20.  It is undisputed that

Starburst Management "has the same post office box in Barnesville, Georgia, as …

[Mrs.] Griggers, according to her bank account statement (P.O. Box 981, Barnesville,

GA)."  Docs. 92-3 ¶ 20; 93-1 ¶ 20; 93-2 ¶ 20.  This is also the same P.O. Box address

provided by Mr. Griggers to the International Association of Bridge, Structural,

Ornamental, and Reinforcing Iron Workers, Local No. 387.  Doc. 92-24 at 3.  The

articles of organization filed with the Indiana Secretary of State were signed by Mr. Griggers.[7]

On December 6, 2012, Roy Lee Baker II, as trustee for Valiant Enterprises, transferred the Greenwood Property from Fortress Management to Starburst Management, by quitclaim deed for $10.00.[8]  *See* Docs. 92-3 ¶ 18; 93-1 ¶ 18; 93-2 ¶ 18.  The deed was recorded December 6, 2012, though the deed states that it was executed on November 30, 2012.  Doc. 92-16.

b. Encumbrances

On December 13, 2012, Oracle, "an Indiana entity," filed a UCC financing statement against Mr. and Mrs. Griggers in the amount of $412,722.50 purportedly secured by the Greenwood Property.  Doc. 92-17; *see* Docs. 92-3 ¶¶ 21-22, 24; 93-1 ¶¶ 21-22, 24; 93-2 ¶¶ 21-22, 24.  Oracle has no Employer Identification Number and is not registered with the Indiana Secretary of State.  Docs. 92-3 ¶ 22; 93-1 ¶ 22; 93-2 ¶ 22.  In fact, it is undisputed that "Oracle is a fictitious entity that uses the [same] P.O. Box address" used by Mr. and Mrs. Griggers and by Starburst Management—i.e., P.O. Box

---

[7] *See* "Filing No. 0004886478," *Starburst Management LLC*, INBIZ (Oct. 21, 2012), https://bsd.sos.in.gov/PublicBusinessSearch/BusinessFilings.  The parties do not dispute the accuracy of information about the entity status of defendants as stated on secretaries of state websites.  *See* Docs. 92-1 at 11 n.6; 93-1 ¶¶ 20, 22; 93-2 ¶¶ 20, 22.  Mr. and Mrs. Griggers argue some information is not relevant.  *See, e.g.,* Docs. 93-1 ¶¶ 20, 22; 93-2 ¶¶ 20, 22.  That is true to an extent.  The status of entities with possible claims of interest in the Greenwood Property is relevant.  Because those entities do not claim an interest in the Greenwood Property, they, in the end, have no bearing on the ultimate outcome of this matter.  However, the circumstances of their creation and their involvement in purported conveyances and encumbrances concerning the Greenwood Property are evidence of schemes to avoid tax liability.

[8] The United States contends that "[Mr.] Griggers transferred the Greenwood Property from Valiant Enterprises (through its nominal trustee, Roy-Lee Baker) to Starburst Management, an Indiana LLC, by [q]uitclaim deed recorded on December 6, 2012, for no consideration."  Doc. 92-3 ¶ 18.  Although Mr. and Mrs. Griggers claim this is disputed, they both acknowledge that it is a matter of public record that on December 6, 2012, Roy Baker, as trustee for Valiant, transferred the Greenwood Property from Fortress Management to Starburst Management by quitclaim deed for $10.00.  Docs. 93-1 ¶ 18; 93-2 ¶ 18.

981 Barnesville, Georgia.  Docs. 92-3 ¶¶ 20, 22; 92-17; 92-18; 92-24 at 3; 93-1 ¶¶ 20, 22; 93-2 ¶¶ 20, 22.

"On February 15, 2013, Oracle filed [a] UCC Lien Addendum releasing the December 13, 2012 UCC Lien on the Greenwood Property and releasing the Griggers' from their purported $412,722.50 obligation." [9]  Docs. 92-4 ¶ 23(h); 92-18.  Three days later, on February 18, 2013, Oracle filed a second UCC Lien against Mr. and Mrs. Griggers in the amount of $1,637,722 purportedly secured by the Greenwood Property. Doc. 92-19; *see also* Docs. 92-3 ¶ 25; 93-1 ¶ 25; 93-2 ¶ 25.

On March 27 and April 9, 2013, the IRS filed notices of federal tax liens against Mr. Griggers in Bibb County, Georgia, for 2002, 2003, 2004, and 2009.[10]  Doc. 92-10 at 7-8.  On June 10, 2013, the IRS filed a notice of federal tax lien against Mr. Griggers in Lamar County, Georgia, for the same tax years.  Docs. 92-4 ¶ 20; 92-10 at 4.

On March 14, 2018, Oracle filed a third UCC Lien against Mr. and Mrs. Griggers in the amount of $1,657,725 purportedly secured by the Greenwood Property. Doc. 92-20; *see also* Docs. 92-3 ¶ 26; 93-1 ¶ 26; 93-2 ¶ 26.  One day later, on March 15, 2018, Oracle filed a fourth UCC Lien against Mr. and Mrs. Griggers in the amount of $1,657,725 purportedly secured by the Greenwood Property.  Doc. 92-21; *see also* Docs. 92-3 ¶ 27; 93-1 ¶ 27; 93-2 ¶ 27.

---

[9] According to both the Lien Addendum and original UCC financing statement, Oracle's address is P.O. Box 981, Barnesville, Georgia.  Docs. 92-17; 92-18.  The Court notes that—contrary to the United States's representations—the second, third, and fourth UCC financing statements list Indiana addresses for Oracle.  Docs. 92-19; 92-20; 92-21.

[10] "As part of the investigation into collection of Mr. Griggers' [tax] liabilities, the IRS located" four different addresses for Mr. Griggers: two in Lamar County and two in Bibb County.  *See* Doc. 92-4 ¶ 22.

It is undisputed that "[a]ll four purported [UCC] lien[s] exceed the Greenwood Property's value from 1998 to 2020."  Docs. 92-3 ¶ 28; 93-1 ¶ 28; 93-2 ¶ 28.  For instance, a Tax Assessor's Report of the Greenwood Property showed its approximate value in 2018 as $101,716.  Doc. 92-22.

On April 5, 2019, Starburst Management was administratively dissolved by the Indiana Secretary of State.  Doc. 92-1 at 11 n.6.  Two months later, on June 16, 2019, the IRS filed a notice of federal tax lien against Starburst Management as Mr. Griggers's nominee for 2002, 2003, 2004, and 2009 tax liabilities in Lamar County.  Docs. 92-4 ¶ 20; 92-10 at 5.

On March 2, 2020, the IRS assessed tax liabilities for the 2015 and 2017 tax years against Mr. Griggers.  Docs. 92-4 ¶ 15; 92-5.

On March 24, 2022, SunTrust Bank released Mr. Griggers's mortgage obligation by Cancellation of Deed to Secure Debt "having been acknowledged as paid in full." Doc. 92-25 at 2; *see also* Docs. 92-3 ¶ 11; 93-1 ¶ 11; 93-2 ¶ 11.  One month later, on April 25, 2022, the IRS refiled its notices of federal tax liens against Mr. Griggers and Starburst Management in Lamar County, Georgia.  Doc. 92-4 ¶ 20.  Notices of federal tax liens for the 2015 and 2017 tax years were seemingly filed only against Mr. Griggers and not Starburst Management.  *See* Doc. 92-10 at 3, 6.

**B. Procedural History**

On May 27, 2022, the United States filed this tax action against Mr. Griggers seeking to enforce federal tax liens against the Greenwood Property under 26 U.S.C. §§ 7401, 7402, and 7403. Doc. 1.  The United States's three-count amended complaint seeks (1) judgment against Mr. Griggers for his unpaid federal tax liabilities; (2) a

determination that Mr. Griggers is the true owner of the Greenwood Property; and (3) foreclosure on the Greenwood Property to enforce its tax liens.  Doc. 6 ¶¶ 48-80.

As required under 26 U.S.C. § 7403(b), the United States joined and served the following parties as defendants who may claim interest in the Greenwood Property: Mary C. Griggers; Andrea Anthony, in her capacity as Tax Commissioner of Lamar County, Georgia; Jennie A. Areson (individually and as trustee for Valiant); Jerry Lahr (individually and as trustee for Valiant); Fortress Management Inc. (as trustee for Valiant); Roy Lee Baker II (individually and as trustee for Valiant); Valiant Enterprises; Starburst Management, LLC; and Oracle.  Docs. 6 ¶¶ 6-13; 13; 15; 16; 17; 18; 19; 23; 47.  As discussed below, the only remaining defendants, aside from Mr. and Mrs. Griggers, are Fortress Management, Inc., Starburst Management, LLC, and Oracle.

The United States now seeks to reduce to judgment assessments against Mr. Griggers for unpaid tax liabilities and tax penalties for 2002, 2003, 2004, 2009, 2015, and 2017.  Doc. 92.  As of December 15, 2023, the United States claims that Mr. Griggers owes a total of $886,065.03 in tax liabilities, penalties, and interest:

|  |  |
|---|---|
| **2002:** $293,054.41 | **2003:** $160,015.47 |
| **2004:** $415,704.92 | **2009:** $7,785.44 |
| **2015:** $1,236.23 | **2017:** $8,268.56 |

Docs. 92-4 ¶ 17; 92-9.

Mr. and Mrs. Griggers, proceeding pro se, also moved for "partial" summary judgment, seeking the dismissal of this action in its entirety.  Doc. 90.  Viewed liberally,[11] the Griggers' motion argues this action should be dismissed (1) because this

---

[11] Some of Mr. and Mrs. Griggers' grounds for dismissal appear only in response to the United States's motion, and many of their arguments in support of their motion are largely the same as their arguments in

Court lacks jurisdiction to hear this case and to enter a final judgment; (2) because Mr. Griggers did not engage in taxable activity; (3) because Mr. Griggers never received notices of deficiencies for the tax liabilities at issue; (4) because the IRS's Forms 4340 "lack evidence of an assessment"; and (5) because IRS Revenue Officer Freeman lacks credibility.  Docs. 90 at 2; 93 at 9-10; 97 at 5-9; 100 at 4; 108 at 5-7.

## II. JURISDICTION

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402.[12]  First, this case involves federal income tax laws, and the United States is a party, so the Court has jurisdiction under Article III of the U.S. Constitution, 28 U.S.C. § 1340, and 28 U.S.C. § 1345.  Second, given the Court's ability to render judgments as necessary to enforce internal revenue laws, and its broad power to compel compliance with the tax laws, the Court has jurisdiction under 26 U.S.C. § 7402(a).  Notwithstanding Mr. Griggers's arguments to the contrary, 28 U.S.C. § 2201, which authorizes declaratory judgment actions except in certain tax matters, does not deprive the Court of subject matter jurisdiction over this case.  Doc. 100 at 2-3.  This is not a declaratory judgment action.  *United States v.*

---

opposition to the United States's motion for summary judgment.  *Compare* Doc. 90 *with* Doc. 93; *see also* Docs. 100; 108.  Because of Mr. and Mrs. Griggers' pro se status, however, the Court construes their motion liberally and addresses, as best the Court can tell, all alleged grounds for dismissal.  *Bellizia v. Fla. Dep't of Corr.*, 614 F.3d 1326, 1329 (11th Cir. 2010).

[12] Sections §§ 7401 and 7402(a) authorize suit and grant district courts jurisdiction, whereas § 7403 specifically relates to actions to enforce a lien or to subject property to payment of tax.  Section 7403(a) authorizes a civil action in federal district court to enforce a tax lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax."  26 U.S.C. § 7403(a).  Federal tax liens may be enforced in a judicial proceeding by "joining all persons who may claim a lien upon or interest in such property, determining the appropriate priorities, selling the property free and clear of the interests of all parties to the action, and distributing the sale proceeds according to the parties' respective priorities."  *United States v. Gachette*, 2021 WL 3557800, at *6 (M.D. Fla. May 20, 2021), *adopted by* 2021 WL 2886077 (M.D. Fla. July 9, 2021).

*Offiler*, 336 F. App'x 907, 908 (11th Cir. 2009) (rejecting taxpayer's argument that 28 U.S.C. § 2201(a) deprived district court of jurisdiction in tax lien enforcement action).

### III. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden rests with the moving party to prove that no genuine issue of material fact exists. *Info. Sys. & Networks Corp.*, 281 F.3d at 1224. The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment." *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (citing *Four Parcels of Real Prop.*, 941 F.2d at 1438). The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Four Parcels of Real Prop.*, 941 F.2d at 1438. In

other words, the moving party's evidence must be so credible that, if not controverted at trial, the party would be entitled to a directed verdict.  *Id*.

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id*. (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Anderson*, 477 U.S. at 255.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.*  Thus, the Court "can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists."  *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986)).

In contrast, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)).  The moving party "simply may show ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (cleaned up).  "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial."  *Info. Sys. & Networks Corp.*, 281 F.3d at 1224-25 (citing *Cartrett.*, 477 U.S. at 324).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted). The Court will consider each motion on its own merits, and will view the facts "in the light most favorable to the non-moving party on each motion." *Am. Bankers Ins. Grp.*, 408 F.3d at 1331; *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012).

## IV. DISCUSSION

### A. General Tax Framework and Principles

If a taxpayer fails to file a return when required, the IRS can prepare a return based on its own knowledge and on information it can collect. 26 U.S.C. § 6020(b); *see also United States v. Dickert*, 635 F. App'x 844, 849 (11th Cir. 2016) (citing *United States v. Stafford*, 983 F.2d 25, 27 (5th Cir.1993) ("[A]lthough the section [§ 6020(b) ] authorizes the Secretary to file for a taxpayer, the statute does not require such a filing, nor does it relieve the taxpayer of the duty to file.")). When the IRS determines a deficiency in income taxes,[13] it must send a notice of deficiency by registered or certified mail to the taxpayer at his last-known address. 26 U.S.C. § 6212(a); *see* 26

---

[13] A deficiency "is the amount by which a tax imposed under the Code exceeds the amount reported by the taxpayer on his tax returns." *See* 26 U.S.C. § 6211(a); *see also Hill v. Commissioner*, 64 F.4th 1240, 1248 (11th Cir. 2023); *United States v. Beane*, 841 F.3d 1273, 1281 (11th Cir. 2016).

C.F.R. § 301.6212–1(a).  The taxpayer then has 90 days to file a petition in Tax Court challenging the deficiency.  26 U.S.C. § 6213(a).

Once the time for appeal to the Tax Court has expired, the IRS may assess the taxpayer for the amount stated in the notice of deficiency.  26 U.S.C. § 6213(c).  Within 60 days of making such an assessment, the IRS must send a notice of assessment and demand for payment to the taxpayer's last-known address.  26 U.S.C. § 6303(a).  If the taxpayer thereafter fails to pay the deficiency, a lien automatically arises "in favor of the United States upon all property and rights to property ... belonging to such person."  26 U.S.C. § 6321.  The government may enforce its liens either through administrative collection methods such as levy and distraint, 26 U.S.C. §§ 6331–6340, or, as in this case, through a civil action in federal district court to reduce the assessment to judgment and to foreclose the tax lien, 26 U.S.C. §§ 7401–7403.  If the court concludes the United States has a "claim or interest," it will generally be obliged to "decree a sale of such property."[14]  § 7403(c); *see also United States v. Rodgers*, 461 U.S. 677, 706-11 (1983) (acknowledging that Congress amended § 7403(c) to provide that district courts "may decree a sale" but holding district courts do not have "unbridled discretion" to decline to do so).

## B. Requirement to File a Tax Return and Pay Income Tax

Mr. Griggers argues this case should be dismissed because the United States "failed to identify a taxing statute, along with it's [sic] implementing regulation, that creates the legal duty to pay such tax or file some tax form."  Doc. 100 at 2.

---

[14] The United States may "seek a forced sale of a property in which a delinquent taxpayer holds an interest, even if a third party also holds an interest."  *United States v. Dase*, 416 F. Supp. 3d 1334, 1339 (N.D. Ala. 2019) (citing *United States v. Rodgers*, 461 U.S. 677, at 691–94 (1893)).

Under 26 U.S.C. § 6012(a), individuals are generally required to file a federal tax return and pay tax if their gross income exceeds certain thresholds.[15]  *See* 26 U.S.C. § 6151 ("[W]hen a return of tax is required … the person required to make such return shall, without assessment or notice and demand from the Secretary… pay such tax at the time and place fixed for filing the return.").  Based on information obtained from third parties, the IRS determined that Mr. Griggers earned income exceeding the applicable threshold during the 2002, 2003, 2004, 2009, 2015, and 2017 tax years.  Docs. 92-4 ¶¶ 11-12; 92-8 at 2; 106-1 ¶¶ 8, 14.  Thus, Mr. Griggers was required to file a federal tax return but failed to do so.  Although Mr. Griggers argues there is no evidence he engaged in taxable activity, he does not address whether the funds identified by the IRS constitute taxable income.  Docs. 100 at 2; 108 at 5-7.  Nor does he deny receiving the funds that the IRS attributes to him.  Docs. 93-1; 108-1.  Therefore, to the extent Mr. Griggers seeks dismissal on the basis that he did not engage in taxable activity, his motion (Doc. 90) is **DENIED**.

## C. Assessment, Notice of Assessment and Demand for Payment

The United States seeks to reduce to judgment assessments against Mr. Griggers for the 2002, 2003, 2004, 2009, 2015 and 2017 tax years.  Doc. 92-1.

To reduce a tax assessment to judgment, the United States must prove that the assessment was properly made and is outstanding.  *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006).  IRS Form 4340, "Certificate of Assessments, Payments,

---

[15] Under 26 U.S.C. § 61(a), gross income is defined as "all income from whatever source derived," unless excluded by law.  "Income" is not defined under the Internal Revenue Code.

and Other Specified Matters," is presumptive evidence of a valid assessment.[16]  *United States v. Chila*, 871 F.2d 1015, 1017-18 (11th Cir.1989); *see also United States v. O'Callaghan*, 500 Fed. App'x 843, 850 (11th Cir. 2012) ("These forms are prima facie evidence that the notice of assessment and demand for payment were mailed to [the taxpayer] in accordance with the statute").  Courts generally accept these certificates as presumptive proof of the validity and amount of the tax assessment unless the taxpayer can show that the assessment is arbitrary or erroneous or that the IRS did not properly issue a notice of deficiency.  *See United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002); *see also Chila*, 871 F.2d at 1018; *White*, 466 F.3d at 1248; *Bone v. Comm'r*, 324 F.3d 1289, 1293 (11th Cir. 2003).

The United States has submitted certified copies of Form 4340 for 2002, 2003, 2004, 2009, 2015, and 2017.  Doc. 92-5.  It has also produced declarations from Revenue Officer Freeman verifying the calculations and account statements for each

---

[16] Mr. Griggers's main argument centers on the absence of a Form 23C, "Assessment Certificate—Summary Record of Assessments."  Doc. 90.  That hyper-technical argument fails because Form 23C, a relic of paper record keeping, has largely been replaced by RACS 006 under current IRS procedures. Doc. 62-1 ¶ 5.  *see also Roberts v. Comm'r*, 329 F.3d 1224, 1228 (11th Cir. 2003).  Specifically, under 26 U.S.C. § 6203 and 26 C.F.R. § 301.6203-1, a tax "assessment shall be made by an assessment officer signing the summary record of assessment."  Historically, this was done using paper Form 23C, but the IRS now uses a computerized Summary Record of Assessments, RACS 006, generated from the IRS's Revenue Accounting Control System.  Doc. 62-1 ¶¶ 4-5.  RACS 006 contains the same information as Form 23C and, only in unique cases, like power outages, is the paper Form 23C still be used.  *Id.* ¶ 5. The United States managed to obtain the Summary Record of Assessment, in the form of Revenue Accounting Control Systems (RACS) 006 Reports, for the tax assessments at issue and provided them to the Griggers on August 17, 2023.  Doc. 66-1 ¶¶ 9-10.

Form 4340 otherwise satisfies the requirements of § 301.6203–1 because it identifies the taxpayer, states the character of the liabilities assessed, the tax period giving rise to the assessment, the amount of the assessment, and the date of assessment.  *See* 26 C.F.R. § 301.6203-1 ("The summary record, *through supporting records*, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment.") (emphasis added); *see also Roberts*, 329 F.3d at 1228; *Pollinger v. I.R.S. Oversight Bd.*, 362 Fed. Appx. 5, 13 (11th Cir. 2010) ("Pollinger's argument that the government was required to produce a Form 23C to support a Form 4340 is … without merit.")

assessment showing unpaid balances.  Docs. 92-4 ¶ 8; 92-9; 106-1.  The assessments are thus presumptively correct.[17]  *White*, 466 F.3d at 1248; *Blohm v. Comm'r*, IRS, 994 F.2d 1542, 1549 (11th Cir. 1993).  Accordingly, the burden shifts to Mr. Griggers to challenge the validity of the assessments or present evidence that the IRS failed to properly mail statutorily required notices of deficiency.

　　　1.  *Certificate of Assessment and Payments*

If a taxpayer challenges a certified assessment, the taxpayer bears the burden of overcoming the presumption of correctness by proving, by a preponderance of the evidence, that the IRS's determinations were either arbitrary or erroneous.  *Welch v. Helvering*, 290 U.S. 111, 115 (1993); *see Bone*, 324 F.3d at 1293; *see also Olster v. Comm'r*, 751 F.2d 1168, 1174 (11th Cir. 1985) ("Absent a finding that the computational methods used, and therefore the assessment, was arbitrary and without foundation, the tax deficiency is presumptively correct," and "the taxpayer has the burden of proving that the computational method used is arbitrary and without foundation.").

Mr. Griggers has not presented any evidence that the IRS's assessments were incorrect.  Instead, Mr. Griggers argues that the IRS's assessments lack foundation,

---

[17] Although Mr. Griggers argues Forms 4340 are inadmissible hearsay, courts have routinely rejected this argument.  Doc. 97 at 3; *see United States v. Dickert*, 635 F. App'x 844, 849-50 (11th Cir. 2016) (citing *Hughes v. United States*, 953 F.2d 531, 539 (9th Cir.1992) (holding Form 4340 met the public records hearsay exception set forth in Federal Rule of Evidence 803(8))).  It is widely recognized that Form 4340 is self-authenticating under Federal Rule of Evidence 902(1).  *See Dickert*, 635 F. App'x at 849.  Forms 4340 submitted by the United States in this case are signed and sealed in accordance with Rule 902. Doc. 92-5.

Mr. and Mrs. Griggers seize on the fact that Forms 4340 filed in connection with the United States's motion for summary judgment and Forms 4340 produced to them in discovery were signed and sealed on different dates.  Doc. 97 at 3-5.  Except for an additional fee for filing lien notices for 2009, however, the Forms 4340 are substantively the same.  *Compare* Doc. 92-5 *with* Docs. 97-1 and 97-2.

and are thus presumably arbitrary,[18] because Revenue Officer Freeman, on whom the United States relies to verify his unpaid tax liabilities, lacks personal knowledge of the assessments and is not a "credible" witness.  Docs. 90 at 2; 108 at 5-7.  These arguments fail.  As discussed in more detail below, the United States has presented evidence establishing the minimal foundation necessary to support each assessment.  *See United States v. Janis*, 428 U.S. 433, 442 (1976); *Blohm*, 994 F.2d at 1549.  And Revenue Officer Freeman testified that she has reviewed the records within the IRS's possession related to Mr. Griggers's tax liabilities and that she has personal knowledge based on those documents of how the liabilities were calculated.[19]  Docs. 92-4 ¶¶ 9, 11-

---

[18] On June 18, 2024, the Court ordered the United States to file a supplemental brief addressing, among other things, "[w]hat evidence tends to establish the defendants' unreported income for each tax year at issue and the method used to calculate the deficiency determination for each tax year at issue."  Doc. 105.  The Court then gave Mr. and Mrs. Griggers the opportunity to respond to the United States's supplemental brief.  Docs. 107; 108.

[19] In another hyper-technical stratagem, Mr. Griggers places much emphasis on his claim that Revenue Officer Freeman is not the "custodian of records" for IRS documents related to this case.  Doc. 90.  This issue has been the subject of various motions and was discussed at a status conference on September 7, 2023, and, then again, at a motion hearing on December 20, 2023.  Docs. 60; 66; 82; 74; 91.  According to Revenue Officer Freeman, the Federal Records Center is the IRS's formal "custodian of records" as it relates to this case.  Doc. 92-4 ¶¶ 4-5.  Nevertheless, IRS records, such as account transcripts, are admissible business records if they are authenticated by a qualified witness who can testify to the methods by which the records are kept and maintained.  Fed. R. Evid. 803(6).  Form 4340 is one type of account transcript generated by the IRS.  Docs. 62-1 ¶¶ 13-16; 92-4 ¶ 8.  The witness testifying about the records need not be the custodian but must be qualified to explain the record-keeping process.  Fed. R. Evid. 803(6); *see Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir.1980) ("Any person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records."); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all decisions the former Fifth Circuit made prior to October 1, 1981).  A Revenue Officer is considered a qualified witness who understands the IRS's record-keeping system.  *See United States v. Bennett*, 2011 WL 7090744, at *5 (M.D. Fla. June 7, 2011) ("This makes the officer competent to testify about the balances of a taxpayer's liabilities, based on their personal knowledge obtained from reviewing the records and making computations using IRS systems."), *aff'd*, 448 F. App'x 991 (11th Cir. 2011); *see also* Docs. 62-1; 92-4;106-1.  As the IRS Revenue Officer assigned to this case, Revenue Officer Freeman is qualified to explain the IRS's record-keeping process, which she testified she was familiar with, and to provide testimony based on the records that she has reviewed.

12, 14; 106-1 ¶¶ 7-8, 14-15; 108 at 3.  She confirmed that IRS Forms 4549, 5278, and 886-A properly state how Mr. Griggers's tax liabilities were calculated.

**2002, 2003, and 2004.**  The United States produced Form 5278, "Statement – Income Tax Changes," for tax years 2002-2004.  Doc. 106-2.  Form 5278 shows the IRS determined Mr. Griggers's income for 2002, 2003, and 2004 based on information reported to the IRS by third parties, including CG Life Pension, Greenwood Consulting, and Quality Research Consultants.  Docs. 106-1 ¶ 8; 106-2.  The IRS then allowed Mr. Griggers the standard deduction, imposed self-employment taxes, imposed tax on the distribution from his pension plan, and imposed income tax penalties.  Docs. 106-1 ¶ 8; 106-2.

**2009.**  The United States produced Form 4549 and a letter dated March 19, 2012, "detailing [Mr. Griggers's] tax liabilities for 2009."  Docs. 92-4 ¶ 14; 92-8.  These documents reflect that Mr. Griggers's 2009 tax liability was based on information obtained from third parties—including information from "employers, banks and other payers reported on Forms W-2, W2-P, [and] 1099."  Doc. 92-8 at 2, 4-5.  Form 4549 shows Mr. Griggers's income was calculated based on information that he received unemployment compensation and other wages; the tax due was then calculated after applying the standard deduction and exemptions to that income.  Docs. 92-8 at 4-5; 106 at 7.

**2015 and 2017**.  The United States produced Forms 4549 and Form 886-A, "Explanation of Items," for tax years 2015 and 2017.  Doc. 106-3.  According to Revenue Officer Freeman's declaration, the IRS determined Mr. Griggers's income for 2015 and 2017 using information reported to the IRS by his employer.  Doc. 106-1 ¶ 15.

"Form 5278 shows that, because [Mr.] Griggers failed to file timely returns, the IRS determined his income from information reported to the IRS from his employer; [then] allowed [him] the standard deduction; accounted for tax withheld from his wages and paid over to the IRS; and imposed income tax and penalties."  Doc. 106-1 ¶ 15; 106-3.

In sum, Forms 4549, 5278, and 886-A explain how the IRS determined the deficiencies for each of the applicable tax years.  Docs. 92-8; 106-2; 106-3.  This evidence is sufficient to establish the minimal foundation necessary to support the IRS's tax assessments.  *Blohm*, 994 F.2d at 1549.  Mr. Griggers has otherwise failed to present any evidence that the IRS's calculations are erroneous.[20]

Accordingly, the United States is entitled to reduce the assessments to judgment unless Mr. Griggers can create a genuine issue of fact about whether the IRS properly mailed notice of deficiency prior to assessing his unpaid income tax liabilities.  To the extent Mr. and Mrs. Griggers move to dismiss this action because the IRS's assessments lack foundation (Doc. 90) that motion is **DENIED**.

*2. Issuance of Notices of Deficiency and the Right to Petition Tax Court*

Mr. Griggers argues summary judgment in favor of the United States should be denied because he never received notices of deficiency for the 2002, 2003, 2004, 2009, 2015, or 2017 tax year.  Docs. 93 at 9; 97 at 9.

---

[20] To the extent Mr. Griggers's arguments could be interpreted to suggest the 2002, 2003, 2004, 2015, and 2017 assessments are somehow erroneous because the IRS assessed penalties and interest under 26 U.S.C. §§ 6651 and 6654, this argument fails.  Doc. 100 at 2.  Sections 6651 and 6654 impose penalties on taxpayers who fail to file tax returns and pay tax.  26 U.S.C. §§ 6651, 6654.  Because Mr. Griggers failed to file federal tax returns and pay the taxes due, the IRS assessed penalties and interest under §§ 6651 and 6654.  Doc. 92-4 ¶ 15.  Although Mr. Griggers argues §§ 6651 and 6654 do not apply to him because there is no evidence he engaged in taxable activity, the Court has already explained that Mr. Griggers was required to file a federal tax return under 26 U.S.C. § 6012(a).  Doc. 100 at 2.  Thus, this argument fails.

Failure to send the taxpayer notice of deficiency generally invalidates a subsequent assessment, unless the statutorily required notice was waived by the taxpayer. *See Mobley v. United States*, 2021 WL 5854271, at *3 (S.D. Ga. Dec. 9, 2021), *aff'd sub nom*. 2023 WL 7321614 (11th Cir. Nov. 7, 2023); *see also Tavano v. Comm'r*, 986 F.2d 1389, 1390 (11th Cir. 1993) ("The mailing of a valid notice of deficiency is generally a prerequisite to formal assessment and collection of the deficiency by the IRS.") (citing 26 U.S.C. § 6213(a)).

"The government has the burden of proving that notice was sent to the taxpayer." *Welch v. United States*, 678 F.3d 1371, 1376 (Fed. Cir. 2012); *Greenberg v. Comm'r of Internal Revenue*, 10 F.4th 1136, 1161-62 (11th Cir. 2021) (citing *Welch* with approval). The Eleventh Circuit has held that actual receipt is not necessary, so long as the notice of deficiency was mailed to the taxpayer at his last-known address.[21]  *United States v. Dixon*, 672 F. Supp. 503, 506 (M.D.Ala.1987), *aff'd mem*., 849 F.2d 1478 (11th Cir.1988); *see also O'Callaghan*, 500 Fed. App'x. at 848.  The United States is entitled to a rebuttable presumption of mailing if it (1) establishes the existence of a notice of deficiency, and (2) produces a properly completed PS Form 3877 certified mail log, or its equivalent. *Welch*, 678 F.3d at 1377-78; *see also O'Rourke v. United States*, 587 F.3d 537, 540 (2d Cir. 2009).  In the absence of a certified mailing log, the United States can meet its burden with evidence that is "otherwise sufficient." *Welch*, 678 F.3d at

---

[21] If the notice of deficiency is sent to an address other than the taxpayer's last-known address, the notice is effective only if it is actually received by the taxpayer with ample time to file a petition for redetermination in Tax Court. *Sicker v. Comm'r of Internal Revenue*, 815 F.2d 1400, 1401 (11th Cir.1987).  Mr. Griggers has not argued the deficiency notices produced by the IRS were improperly addressed.  He simply argues they were not mailed because he did not receive them.  *See* Docs. 93 at 9; 97 at 9; 108 at 2-3.

1377.  "[E]vidence of the [IRS]'s mailing practices corroborated by direct testimony or documentary evidence" meets this standard.  *Greenberg*, 10 F.4th at 1161-62.

**2002, 2003, and 2004**.  The United States has produced a notice of deficiency addressed to Mr. Griggers for 2002, 2003, and 2004.  Doc. 92-6.  It has also submitted the declaration of Revenue Officer Freeman, stating she is familiar with IRS policies and procedures and that the IRS mailed the notice of deficiency in accordance with its standard practices.  Docs. 92-4 ¶ 4; 106-1 ¶¶ 3, 8, 14.  She testified that the IRS sent a notice of deficiency for 2002, 2003, and 2004 to Mr. Griggers at his last-known address by certified mail on May 14, 2012.  Doc. 106-1 ¶¶ 8, 12.  A copy of the notice is in the record.  Doc. 92-6.

Based on an alleged screenshot recently taken from a USPS website, Mr. Griggers claims the tracking number associated with the deficiency notice "has never been used in the 12 years since the Notice was presumably mailed."  Doc. 108 at 2; *see also* Docs. 93-7; 97-5; 108-4.  That argument fails.  First, the screenshot, if that is what it is, is not admissible.  It bears no URL, date, official title, or other authenticating information.  Fed. R. Evid. 803 and 902; *see Hawkes v. BSI Fin., Inc*., 444 F. Supp. 3d 260, 267 (D. Mass. 2020) (discussing admissibility of screenshot of USPS website); *see also MSP Recovery Claims, Series LLC v. Am. Nat'l Prop. & Cas. Co*., 550 F. Supp. 3d 1311, 1319 & n.9, 1320 (S.D. Fla. 2021) ("Courts have … held the date the website was accessed and the webpage URL address must be provided to authenticate a screenshot.").  Second, even if the screenshot were admissible, the Court cannot conclude from the screenshot that the tracking number associated with the May 14, 2012 notice of deficiency was not, as Mr. Griggers claims, "used in the 12 years since" it

was presumably mailed.  Doc. 108 at 2.  At most, the screenshot suggests that information is not available.  That is significant because Mr. Griggers does not provide or cite evidence that the USPS retains records for a twelve-year-old mailing.[22]  Finally, "[i]n the absence of any direct evidence contradicting the Government's position, the presumption of official regularity controls.  The presumption of regularity supports the official acts of public officers and, in the absence of *clear evidence to the contrary*, courts [must] presume that they have properly discharged their official[] duties." *O'Callaghan*, 500 Fed. App'x at 848 (quoting *Dixon*, 672 F. Supp. at 506).  The screenshot submitted by Mr. Griggers is not sufficient to rebut this presumption.  Thus, Mr. Griggers fails to create a genuine issue of fact about whether notice of deficiency for 2002, 2003, and 2004 was properly mailed.

Summary judgment in favor of the United States for the 2002, 2003, and 2004 tax years is **GRANTED**.

**2009.**  According to the United States, formal notice of deficiency was not required for the 2009 tax year because Mr. Griggers consented to his tax liability by

---

[22] In fact, it is clear that such records are not retained.  The Court takes judicial notice of the USPS policy that tracking records "including access to package history and Proof of Delivery … are stored in the system" for two years at most.  *See* "How long are records kept for tracking?" USPS TRACKING (Mar. 28, 2024), https://faq.usps.com/s/article/USPS-Tracking-The-Basics#What_is_USPS_Tracking; *see also Hawkes v. BSI Fin., Inc.*, 444 F. Supp. 3d 260, 267 (D. Mass. 2020) ("[P]laintiffs' failure to locate the tracking number was due to USPS record-retention policies."); *see also Wilmington PT Corp. v. Tiwana*, 2023 WL 4673777, at *10 (E.D.N.Y. June 12, 2023) ("In ascertaining whether … USPS tracking results raise a genuine material issue in dispute, the Court takes judicial notice that the USPS website states that it stores tracking records related to certified mail for [only] two years.").

"The Court may take judicial notice of government publications and website materials."  *Coastal Wellness Centers, Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n.4 (S.D. Fla. 2018); *see also R.S.B. Ventures, Inc. v. F.D.I.C.*, 514 F. App'x 853, 856 n.2 (11th Cir. 2013) (taking judicial notice of information found on the FDIC's website); *Lamonte v. City of Hampton, Ga.*, 576 F. Supp. 3d 1314, 1327 (N.D. Ga. 2021) ("It is established law that a court may take judicial notice of government websites") (citing Fed. R. Evid. 201(b)(2)).  Under Federal Rule of Evidence 201, "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed."  Fed. R. Evid. 201(e).  Any party who desires to be heard **SHALL FILE** a response within fourteen days of the entry of this order.

signing and returning IRS Form 4549.  Docs. 92-1 at 5; 92-4 ¶ 14; *see also R.G. Cope, Jr., Inc. v. Comm'r,* 781 F.2d 852, 853 (11th Cir. 1986).  Under 26 U.S.C. § 6213(d), a taxpayer may voluntarily waive the right to formal notice of deficiency and the right to appear before the Tax Court.  "If a taxpayer files a waiver, the IRS does not have to wait before initiating collection, and the taxpayer does not have to pay the interest that would otherwise accrue during the waiting period."  *United States v. Trevitt*, 196 F. Supp. 3d 1366, 1373 (M.D. Ga. 2016) (quoting *Ulrich v. Comm'r*, 585 F.3d 1235, 1237 (9th Cir.2009) (citing 26 U.S.C. § 6601(c)).

The United States has produced a Form 4549 for 2009 with Mr. Griggers's signature dated March 30, 2012.  Doc. 92-8.  By signing Form 4549, a taxpayer confirms the following:

> Consent to Assessment and Collection- I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report.  Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law.

Doc. 92-8 at 5.  The signed Form 4549 submitted by the United States lists Mr. Griggers's total deficiencies for 2009 as $7,644, which is the amount that was assessed on May 28, 2012.  Docs. 92-4 ¶ 15; 92-5; 92-8 at 4.

Although Mr. Griggers acknowledges the signature "looks like Grigger's [sic] signature," he claims it is a forgery.  Docs. 93 at 9; 97 at 9; 108-1 ¶ 16.  The United States cites no presumption or anything else to overcome Mr. Griggers's adamant denial that he did not sign the Form 4549, and the Court cannot conclude as a matter of

law that he did.[23]  Accordingly, summary judgment in favor of the United States for the 2009 tax year is **DENIED**.

**2015 and 2017.**  The United States has produced a notice of deficiency for 2015 and 2017 addressed to Mr. Griggers at the Greenwood Property.  Doc. 92-7.  The United States also submitted the declaration of Revenue Officer Freeman, stating she is familiar with IRS policies and procedures and that the IRS mailed Mr. Griggers a statutory notice of deficiency for 2015 and 2017 in accordance with its standard practices.  Docs. 92-4 ¶¶ 4, 13; 106-1 ¶¶ 3, 8, 14.  She testified that the IRS mailed notice of deficiency for 2015 and 2017 to Mr. Griggers at his last-known address on August 23, 2019.  Doc. 106-1 ¶ 14.  Although Mr. Griggers denies receiving the notice in his summary judgment response, Mr. Griggers admitted[24] in his counterclaim that the United States "sent a series of notices and demands to [him]" including a "Letter 531, [for] tax periods 2015, 2017" on August 23, 2019.[25]  Doc. 53 at 3; 53-4.  In any event, the United States is only required to show that the statutory notice was mailed to Mr. Griggers at his last-known address, not that it was received.  *Dixon*, 672 F. Supp. At 506; *O'Callaghan*, 500 F. App'x at 847.

In sum, because Mr. Griggers has not presented any evidence to rebut the assessments' presumption of correctness, and because he fails to create an issue of fact that a notice of deficiency for 2015 and 2017 was mailed to him and because the United States has otherwise established that the notice was mailed to Mr. Griggers's

---

[23] The United States deposed Mr. Griggers but did not file a transcript of the deposition.  A thorough cross-examination of Mr. Griggers about his forgery charge could have shed some light on the subject.

[24] The Court reminds Mr. Griggers of his duty of candor.  *See* Fed. R. Civ. P. 11.

[25] *See* "Letter 531 – Notice of Deficiency," *Letters and notices offering an appeal opportunity*, IRS (Aug. 20, 2024), https://www.irs.gov/appeals/letters-and-notices-offering-an-appeal-opportunity.

last-known address, the United States is entitled to reduce to judgment assessments for the 2015, and 2017 tax years.  Accordingly, summary judgment in favor of the United States on this issue is **GRANTED**.

As discussed, summary judgment regarding assessments for 2002, 2003, and 2004 is also **GRANTED**.  The only issue for trial concerning the validity of the IRS's assessments is whether Mr. Griggers consented to immediate collection of his 2009 tax liability.

## D. Judicial Foreclosure and Nominee Liability

Because the Court has determined that Mr. Griggers's 2009, 2015, and 2017 tax liabilities were validly assessed, federal tax liens in favor of the United States arose automatically under 26 U.S.C. § 6321, once the IRS provided notice of assessment and demand for payment and Mr. Griggers thereafter failed to pay.  The United States now seeks to foreclose its tax liens on the Greenwood Property, which is titled in the name of Mr. Griggers's alleged nominee:[26]  Doc. 92 at 14-16 & n.7.

### 1. Nominee Liability

The United States may enforce a tax lien against property held by a nominee if it can establish that the taxpayer effectively owns and controls the property.  *May v. A Parcel of Land*, 458 F. Supp. 2d 1324, 1334–35 (S.D. Ala. 2006) ("*May I*"), *aff'd sub nom.*, 2007 WL 3287513 (11th Cir. Nov. 8, 2007) ("*May II*"); *see also G.M. Leasing v. United States*, 429 U.S. 338, 350-51 (1977).  Once nominee liability is established, the IRS may seek to foreclose on the property to satisfy the taxpayer's liability.

---

[26] A "nominee" is generally a third party who holds legal title to the property of a taxpayer, while the taxpayer enjoys full use and benefit of that property.  *See Shades Ridge Holding Co., Inc. v. United States*, 888 F.3d 725, 728-29 (11th Cir. 1989); *see also Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000).

The nominee theory is a federal doctrine used to determine if, despite title being held in another person's name, the property actually belongs to the taxpayer under federal law. *Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 728 (11th Cir. 1989), *as amended on denial of reh'g* (Sept. 29, 1989). To establish nominee liability, the United States must show that the taxpayer retains beneficial ownership of the property, even though legal title is held by another party. *See May II,* 2007 WL 3287513, at *1 ("A nominee is one who holds bare legal title to property for the benefit of another.") (quoting *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir.2001)). If so, the IRS can treat the property as belonging to the taxpayer and impose a lien on it, even if it is titled in the name of a nominee. *Id.*

When applying the nominee doctrine, federal courts look first to state law to define the applicable property interest or interests. *May II,* 2007 WL 3287513, at *2. Once those interests are identified, courts apply federal law to determine if the property is subject to a federal tax lien.[27] *Id.* Where state law fails to define a clear test, district courts are guided by the common-law factors generally applied by federal courts to determine the existence of a nominee relationship. *Wilson v. United States*, 644 F. Supp. 3d 1344, 1351-52 (N.D. Ga. 2022) (collecting cases).

Georgia law recognizes that true ownership or an ownership interest may rest with a party who is not the titleholder of record, but there is no bright-line test for determining nominee status. Georgia law on implied trusts, for instance, is analogous to the nominee theory, and nominee factors generally considered by federal district

---

[27] Regardless of whether state or federal law controls the nominee question, the Eleventh Circuit has said the difference between state and federal law is rarely of "little moment." *Shades Ridge*, 888 F.2d at 728.

courts often overlap with elements of voidable transfers.[28]  O.C.G.A. § 18-2-74; *see also* *Wilson*, 644 F. Supp. 3d at 1352, 1535; *May I*, 458 F. Supp. 2d at 1337 n.22 ("[I]t would be erroneous to focus on the label applied to the doctrine by [state] courts, as opposed to its substance … federal appellate courts have deemed state law to bear on the nominee question even when the state courts have called it something else.") (second alteration in original).  But Georgia law recognizes only two types of implied trusts, resulting trusts and constructive trusts, neither of which precisely fit the facts of this case.[29]  *See* O.C.G.A. § 53-12-2(5); *Wilson*, 644 F. Supp. 3d at 1352-53.

Accordingly, the Court is guided by the common-law factors generally applied by federal courts to determine the existence of a nominee relationship.

> District courts in the Eleventh Circuit consider the following factors in determining whether property is being held by a nominee of the taxpayer: (1) whether the taxpayer exercised dominion and control over the property; (2) whether the property of the taxpayer was placed in the name of the nominee in anticipation of collection activity; (3) whether the purported nominee paid any consideration for the property, or whether the consideration paid was inadequate; (4) whether a close relationship exists between the taxpayer and the nominee; and (5) whether the taxpayer pays the expenses (mortgage, property taxes, insurance) directly, or is the source of the funds for payments of the expenses.

---

[28] While related, the concepts of "nominee", "transferee", and "alter ego" are independent bases for attaching the property of a third party in satisfaction of a delinquent taxpayer's liability.  *Oxford Capital Corp.*, 211 F.3d at 284.  Nominee status does not depend on the finding of fraud, whereas a fraudulent transfer seeks to avoid a transfer made to generally hinder, delay, or defraud creditors.  *Oxford Capital Corp.*, 211 F.3d at 284; *United States v. Bollinger*, 485 U.S. 340, 347–48 (1988).

[29] At least one district court in this circuit has recognized that "resulting trusts, rather than constructive trusts, are most analogous to the nominee lien framework."  *Wilson*, 644 F. Supp. 3d at 1353.  Georgia law provides that "[c]ourts may consider all facts and circumstances surrounding the transaction to determine whether the parties intended a … resulting trust."  *In re McFarland*, 619 F. App'x 962, 968–69 (11th Cir. 2015) (citing O.C.G.A. § 53–12–133 and *Harrell v. Harrell*, 249 Ga. 170, 290 S.E.2d 906, 907 (1982)).  "Consideration of the common law nominee ownership factors is plainly permissible under this broad framework."  *Wilson*, 644 F. Supp. 3d at 1356.

*United States v. Wilkins*, 2019 WL 12518510, at *18 (M.D. Fla. Feb. 26, 2019); *see also Wilson*, 644 F. Supp. 3d at 1358 (same); *May II,* 2007 WL 3287513, at *3.  Although no factor alone is dispositive, the critical issue in determining whether property is held by a nominee is whether the taxpayer has substantial, and often exclusive or nearly exclusive, control over the property.  *Shades Ridge*, 888 F.2d at 728 ("The issue under either state or federal law depends upon who has 'active' or 'substantial' control."); *see also May II*, 2007 WL 3287513, at *3.  If the taxpayer continues to control and benefit from the property, the titleholder (nominee) is considered to be holding the property for the taxpayer, and the property is subject to foreclosure to enforce a federal tax lien.

The United States argues that "although [Mr.] Griggers transferred the [Greenwood Property] three times between 1999 and 2012 and the entity Starburst Management, LLC … holds its bare legal title, the federal tax liens still attach because:1) the transfers preceding Starburst's acquisition were fictitious; 2) Starburst is Griggers' nominee; and 3) Griggers retained control of the property after all three transfers by residing there, paying its expenses, and creating bogus encumbrances against it."  Doc. 92-1 at 9.  Because Mr. and Mrs. Griggers make no effort to rebut these arguments or the evidence supporting them, and because no other defendant has claimed an interest in the Greenwood Property or has otherwise contested the right of the United States to foreclose as requested, the Court could stop here.  *See* Docs. 93-1 ¶¶ 9-29; 97; 104; 108.  But because of the Griggers' pro se status, the Court addresses each nominee factor.

**Dominion and Control.**  The most important nominee factor is control.  *Shades Ridge*, 888 F.2d at 728.  It is undisputed that Mr. and Mrs. Griggers have resided at the

Greenwood Property since 1998.  Docs. 92-3 ¶ 29; 93-1 ¶ 29; 93-2 ¶ 29.  They have also attempted to obtain four UCC loans using the Greenwood as collateral, which is evidence of control.  Docs. 92-3 ¶¶ 21-29; 93-1 ¶¶ 21-29.  As the United States points out, "[t]he timing of the liens is significant, as all four were executed after November 20, 2012 – the date Starburst acquired title."  Doc. 92-1 at 13.  Thus, this factor favors the United States.

**Anticipation of Collection Activity.**  The second factor, to a point, favors the United States.  Although the first two transfers of the Greenwood Property occurred prior to any tax being assessed in this case,[30] there is evidence that the Greenwood Property was transferred to Starburst Management, the current nominal holder of title, in anticipation of collection activity.  Specifically, on May 28, 2012, the IRS assessed tax liabilities for the 2009 tax year.  Doc. 92-4 ¶ 15.  Then, on October 8, 2012, unpaid federal income tax liabilities for 2002, 2003, and 2004 were assessed against Mr. Griggers.  *Id*.  Later that month, Starburst Management was registered with the Indiana Secretary of State on October 21, 2012.  Docs. 92-3 ¶ 20; 93-1 ¶ 20; 93-2 ¶ 20.  Mr. Griggers signed the articles of organization filed on behalf of Starburst Management with the Indiana Secretary of State.[31]  Finally, on November 30, 2012, Roy Baker, as trustee for Valiant enterprises, transferred the Greenwood Property from Fortress Management to Starburst Management by quitclaim deed for $10.00; the deed was recorded on December 6.  Docs. 92-3 ¶ 18; 93-1 ¶ 18; 93-2 ¶ 18.

---

[30] There is evidence that a notice of federal tax lien was filed against Mr. Griggers for a 1999 tax liability, which is not at issue in this case.  Doc. 92-10 at 4.  The Court is unaware of when the 1999 tax liability was assessed.

[31] *See* "Filing No. 0004886478," *Starburst Management LLC*, INBᵢᴢ (Oct. 21, 2012), https://bsd.sos.in.gov/PublicBusinessSearch/BusinessFilings.

There is also evidence that Mr. and Mrs. Griggers attempted to encumber the Greenwood Property in anticipation of collection activity. Specifically, after the IRS assessed Mr. Griggers's 2002, 2003, and 2004 tax liabilities on October 8, 2012, totaling roughly $300,000 (Doc. 92-4 ¶ 15), the following events occurred:

- On December 13, 2012: Oracle filed a UCC Financing Statement against Mr. and Mrs. Griggers in the amount of $412,722.50 purportedly secured by the Greenwood Property. Docs. 92-3 ¶ 24; 93-1 ¶ 24; 93-2 ¶ 24.

- On February 15, 2013: "Oracle filed [a] UCC Lien Addendum releasing the December 13, 2012 UCC Lien on the Greenwood Property and releasing the Griggers' from their purported $412,722.50 obligation." Doc. 92-4 ¶ 23(h).

- On February 18, 2013: Oracle filed a second UCC Lien against Mr. and Mrs. Griggers in the amount of $1,637,722 purportedly secured by the Greenwood Property. Docs. 92-3 ¶ 25; 93-1 ¶ 25; 93-2 ¶ 25.

In sum, there is evidence that the Greenwood Property was transferred to Starburst Management in anticipation of collection activity, and that Mr. and Mrs. Griggers attempted to encumber the property in anticipation of collection activity. Accordingly, the second factor favors the United States.

**Consideration Paid by Nominee**. The third factor, whether the nominee paid any consideration and if so whether it was adequate, clearly favors the United States. *May I*, 458 F. Supp. 2d at 1328, 1338-39. Both Mr. and Mrs. Griggers acknowledge that it is a matter of public record that on or around December 6, 2012, Roy Baker, as trustee for Valiant Enterprises, transferred the Greenwood Property from Fortress Management to Starburst Management by quitclaim deed for $10.00. Docs. 93-1 ¶ 18; 93-2 ¶ 18. According to a screenshot from the Lamar County Tax Assessor website,

the Greenwood Property's fair market value ranged from $102,000 in 1998 to $117,550 in 2021.[32]  Doc. 92-22.  Accordingly, this factor favors the United States.

**Close Relationship.**  The existence of a close relationship between the taxpayer and the nominee also favors the United States.  The Greenwood Property has supposedly been "held in trust" for the benefit of Valiant Enterprises since it was first transferred by Mr. Griggers on January 4, 1999 until December 6, 2012, when it was transferred to Starburst Management.  Docs. 93-1 ¶¶ 12-14, 18; 93-2 ¶¶ 12-14, 18.  Mr. and Mrs. Griggers previously identified themselves as Valiant's "Co-Managing Directors."  Docs. 93-1 ¶ 13; 93-2 ¶ 13.  Although the Greenwood Property is no longer held in trust by Valiant, Starburst Management's principal office address is also Mr. and Mrs. Griggers' address—(P.O. Box 981, Barnesville, GA).  Docs. 92-1 at 11; 92-3 ¶ 20; 93-1 ¶ 20; 93-2 ¶ 20.  Accordingly, there is a close relationship between the taxpayer and the nominee, and this factor favors the United States.

**Payment of Property Expenses.**  The last factor, whether the taxpayer pays property expenses, favors the United States.  Specifically, Mr. Griggers incurred a mortgage obligation in his name when he first purchased the property on December 31, 1998.  Docs. 92-3 ¶¶ 9-10; 93-1 ¶¶ 9-10.  Since then, Mr. Griggers has apparently continued to pay the obligation, and it was discharged by Cancellation of Deed to Secure Debt recorded on March 24, 2022.  Docs. 92-3 ¶¶ 10-11; 93-1 ¶¶ 10-11.  The

---

[32] Since Mr. Griggers purchased the Greenwood Property, it has been transferred three times; each time the fair market value of the property exceeded the consideration of either $10.00 or $0.00 listed in the public records.  Docs. 92-3 ¶¶ 12, 14, 18; 93-1 ¶¶ 12, 14, 18.  Although the United States argues the transfers are fictitious because the entities involved were not valid, lacked proper registration, and/or consideration paid for each transfer was inadequate, it has not asked the Court to set aside these conveyances.  Instead, the United States argues it can enforce its lien against the property because "every purported transfer of title was to individuals or entities that either have no interest in the property, disclaim any interest in the property, or are one and the same as Griggers."  Doc. 92-1 at 11.

United States argues "the instrument releasing the obligation is directed solely to [Mr.] Griggers himself, not any other entity, showing that he paid down the obligation throughout his years of residence."  Docs. 92-1 at 12; 92-5.  There is no evidence that anyone other than Mr. Griggers paid the mortgage obligation.  Thus, the record shows that Mr. Griggers satisfied his $81,600.00 mortgage obligation as of that date.  Doc. 92-4 ¶ 23(n).  This factor favors the United States.

In sum, the undisputed facts weigh in favor of a determination that Starburst Management, LLC is the nominee of Ray Griggers as it relates to the Greenwood Property.  *See May II*, 2007 WL 3287513, at *3 ("[T]he evidence is undisputed that … [taxpayer] has enjoyed full beneficial ownership and control over the property since 1985; not only has he resided uninterrupted on the property for over two decades, he has also mortgaged the property in his name.").  The record establishes that Mr. Griggers "has continued to enjoy the full complement of incidences of dominion, ownership and control over the [Greenwood] Property at all relevant times."  *May I*, 458 F. Supp. 2d at 1339.  "He has resided at the Property continuously since [1998]," and "[h]e has appeared on mortgage documents as a mortgagor for the Property."  *Id*.  If, Mr. Griggers had "no interest in the [Greenwood] Property, then it is difficult to comprehend how he could be classified as a mortgagor with respect to that Property, given that he would have no interest to mortgage."  *Id*. at 1330 n.10.  "Based on the facts and circumstances presented in the record, the only reasonable inference that may be drawn is that [Ray Griggers] remains to this day a true beneficial owner of the Property."  *Id*. at 1339.  Thus, the Court determines there is no genuine issue of fact as

to whether Mr. Griggers has an ownership interest in the Greenwood Property—he does.

Next, having determined Mr. Griggers's has a recognized property interest in the Greenwood Property, the Court must determine whether his rights qualify as "property" or "rights to property" within the compass of the federal tax lien statute. *United States v. Craft*, 535 U.S. 274, 278 (2002). The answer is yes. Under 26 U.S.C. § 6321, a lien arises "in favor of the United States upon all property and rights to property ... belonging to [the taxpayer]." Section 6321 "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985). Accordingly, the Eleventh Circuit has recognized that "property" and "rights to property" for purposes of 26 U.S.C. § 6321 include "'not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee ... of the delinquent taxpayer.'" *May II*, 2007 WL 3287513 at *1 (quoting *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005)). Thus, Mr. Griggers's interest in the Greenwood Property unquestionably falls within the meaning of "property" or "rights to property" under § 6321.

Again, Mr. Griggers offers no evidence or argument to dispute that his interest in the Greenwood Property falls squarely within the parameters of the federal nominee doctrine. Thus, the Court determines, as a matter of law, that Starburst Management, LLC holds title to the Greenwood Property as Ray Griggers's nominee, and that the IRS's tax liens against Mr. Griggers may attach to the Greenwood Property. Summary judgment in favor of the United States on this issue is **GRANTED**.

36

2.  *Foreclosure and Priority of Liens:*

The United States asks the Court to order a forced sale of the Greenwood

Property and to determine that its tax liens have priority over any interests held by the

remaining defendants.  Doc. 92-1 at 14.  Under 26 U.S.C. § 7403(c), the Court has

authority to adjudicate all matters and claims associated with the Greenwood Property

and to determine the merits and priorities of all interests in, and liens against, the

property.  Again, the following parties were joined as defendants who may claim interest

in the Greenwood Property pursuant to 26 U.S.C. § 7403(b): Mary C. Griggers; Andrea

Anthony, in her capacity as Tax Commissioner of Lamar County, Georgia; Jennie A.

Areson (individually and as trustee for Valiant); Jerry Lahr (individually and as trustee

for Valiant); Fortress Management Inc. (as trustee for Valiant); Roy Lee Baker II

(individually and as trustee for Valiant); Valiant Enterprises; Starburst Management,

LLC; and Oracle.  Docs. 6 ¶¶ 6-13; 13; 15; 16; 17; 18; 19; 23; 47.  None has claimed

any interest or priority, and some have expressly disavowed any interest.

Lamar County Tax Commissioner Andrea Anthony has disclaimed any interest in

the Greenwood Property and has been dismissed from the case.[33]  Doc. 32.  Jennie

Areson and Roy-Lee Baker II have also disclaimed any interest they may have in the

Greenwood Property, both individually and in their capacities as trustees for Valiant,

and have also been dismissed.  Docs. 26; 42; *see also* Docs. 92-3 ¶¶ 17, 19; 93-1 ¶¶

17, 19; 93-2 ¶¶ 17, 19.  Jerry Lahr—who was properly served by publication—failed to

appear or otherwise defend, and the Court granted the United States's motion for

---

[33] Should any ad valorem real property taxes entitled to priority under 26 U.S.C. § 6323(b)(6) be due and owing, they will be paid as a cost of sale.  Doc. 32 at 3.  Anthony otherwise stipulated that the Tax Commissioner will not share in any proceeds of a sale ordered by the Court.  *Id.*

default judgment against him.  Doc. 61.  Based on the terms of Ms. Areson's and Mr.

Baker's stipulations, as well as the default judgment entered against Mr. Lahr, none of

these individuals or Valiant Enterprises have valid legal interests in the Greenwood

Property.  Docs. 26; 42; 61.

Aside from Mr. Griggers, the remaining defendants are Mrs. Griggers, Fortress

Management, Inc., Starburst Management, LLC, and Oracle.

First, the United States argues "Mary Griggers never had title to or an interest of

record in the Greenwood Property, although she resides there, and "[d]espite her

residency, … [s]he has no legal interest in the property, and has demonstrated no other

interest, so is not entitled to share in any sales proceeds."  Doc. 92-1 at 15 (citing

*Rodgers*, 461 U.S. at 692).  Mrs. Griggers was properly joined and served in this action.

Docs. 6 ¶ 6; 17.  She has also personally participated throughout these proceedings but

does not dispute the United States's assertion that she has no legal or other interest in

the Greenwood Property.  Consequently, any interest she might have is subordinate to

the United States's federal tax liens.

Second, the United States argues "Fortress Management, Inc., Starburst

Management, LLC, and Oracle are fictitious entities" and "their interests are either

shams or one and the same as [Mr.] Griggers."  Doc. 92-1 at 16.  According to the

United States, they therefore "are not entitled to claim separate interests in any

proceeds from the sale of" the Greenwood Property.  *Id.*  Fortress Management,

Starburst Management, and Oracle were properly joined and served in this action but

failed to appear, answer or otherwise defend themselves against the United States's

claims.  Docs. 6 ¶¶ 9, 11-12; 16; 18; 19.  Most importantly though, Starburst

Management, the current nominal titleholder, has claimed no interest in the property. Thus, any interest Fortress Management, Starburst Management, or Oracle may have is subordinate to the United States's federal tax liens.[34]

Accordingly, the United States's tax liens have first priority. The United States's motion for summary judgment on this issue is **GRANTED**.

## V. CONCLUSION

For the foregoing reasons, Mr. and Mrs. Griggers' motion is **DENIED** (Doc. 90). The United States's motion (Doc. 92) is **GRANTED** in part and **DENIED** in part.

Summary judgment in favor of the United States for the tax years 2002, 2003, 2004, 2015 and 2017 is **GRANTED**. Additionally, it is hereby **ORDERED** that the United States's tax liens have first priority, and it is also **ORDERED** that there are no genuine issues of material fact (a) that Ray E. Griggers holds an ownership interest in the Greenwood Property; (b) his interest qualifies as a right to property under federal tax lien legislation; and (c) that Starburst Management LLC holds title to the Greenwood Property as the nominee of Ray Griggers, such that properly filed nominee liens against Ray Griggers attach to the property.

Summary judgment in favor of the United States for the 2009 tax year is **DENIED**. The only issue for trial concerning the validity of the IRS's assessments is whether Mr. Griggers consented to immediate collection of his 2009 tax liability.

---

[34] Under 26 U.S.C. § 6323(a), a federal tax lien has priority over any subsequent liens or interests unless a superior interest is established. Of course, as the Court has found, the undisputed facts establish that Starburst Management is only a nominee of Mr. Griggers as it relates to the Greenwood Property.

**SO ORDERED**, this 23rd day of September, 2024.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT